Our next case this morning is number 15-5017, American Government Properties v. United States. v. United States. v. United States. We submit that the court did in fact err. What we had here was a reorganization. The Contracts Act does not apply to reorganizations. I think what we need to do is look at... Why isn't New Iberia and American Government Properties two different corporate entities? They are. And they were different ownership. With different ownership. Two entities. With different ownership. Well, no. When this contract was assigned, New Iberia was a wholly owned subsidiary of American Government Properties. There were no different owners coming into this situation. American Government Properties, as it would... When did the different ownership come in? Well, the different ownership was simply two of the owners withdrew. We never had new people coming into this situation. When did they withdraw? They withdrew in 2007. And when was the new entity created? 2005. And it was in 2005 when the contract was assigned to New Iberia. The reason American Government Properties withdrew this is because the banks were typically required. Wait, I'm confused. I thought that you asserted that it was in April 2007 when New Iberia sent a letter to the government entitled, Lesser Change, American Government Properties and New Iberia. I thought that was in April 2007. Am I misremembering my facts? So I don't think that the transfer occurred in 2005. I think that's when the government executed the lease with AGP. But I have in my records that New Iberia sent a letter to the government with the Lesser Change in April 2007. So I'm just wondering about the timing that Judge Dykes asked you about, about the change in ownership. Well, the joint appendix, page 316, if I can get that. This is a letter to the government back in December 19 of 2005. Page 316, did you say? Yes. Yeah, well, that suggests that New Iberia was created in 2005, but it doesn't suggest when the reported assignment took place. The assignment took place when it was created. And it was created in August of 2005. But don't you need the government to sign and agree to the assignment? I mean, you can't just, there's a rule, you can't just reassign government contracts, right? If it's part of a reorganization, yes. And I think the case that I would direct the Court's attention to is the Johnson Controls case. Because what happened in Johnson Controls... Before you get into that, when did this, I think we're trying to figure out what the timeline is. When did the reported assignment take place? That took place in August of 2005. And if you look at joint appendix 230, the assignment is there. I don't have it, page 230. 230. Oh, there's a number in there, yeah. And 230 is the date of the actual assignment of the lease following the creation of New Iberia as a subsidiary of American government properties. So what you're arguing is at that time it was a wholly owned subsidiary, even though the ownership changed later. Well, when we talk about ownership change, I think we've got to distinguish between two things. Well, some people withdrew. That's an ownership change, isn't it? That's correct. Yes, to that extent, yes. We didn't have any new people coming in. Two people withdrew in 2007. But when they withdrew in 2007, nothing was happening with respect to the lease. The lease wasn't being reassigned to a stranger or to a new person. And I think you also have to look at one of the purposes of the Act, and that's so that the government knows who it's dealing with and there's some continuity there. The government at all times during this process was dealing with, I'll call him Vic Blackman. He was the manager. Basically everything that took place in this contract, construction of this building, took place through Vic Blackman. The Bartons had nothing to do with that. Jim and Greg, his son, had nothing to do with the construction contract. As a matter of fact, when a contractor gets a contract, they have to send a list of all the people, the key people, that are going to be involved in that contract. So what cases suggest that you can set up a subsidiary, transfer the contract to it without the approval of the government? Well, the Johnson Control case says that that is a reorganization and that the Contracts Act does not apply to reorganizations. Johnson's case, Johnson Control's case, right at the beginning it gives a fact pattern. It says back in 1980, Airways established a new 100% subsidiary, PAWS, and then transferred the contract into PAWS. First paragraph of the facts. The case then goes on, and it identifies that as a transfer by operation of law because it is a reorganization. And then later on in the case, it says transfers or assignments occurring by operation of law are exempt from the application, and it cites Seaborne. What was the nature, Johnson is your key case, right? Yeah. What was the nature of what constituted a reorganization in Johnson? Johnson started out with Airways, Pan American Airways. Pan American Airways set up, had a contract with the government. And Pan American Airways then created a 100% owned subsidiary. That was for purpose of the case referred to as PAWS, the acronym. They then transferred the contract that they had down to the subsidiary. Now at a later point in time, and this was done in 1980, and the contract they were signing was a contract of 1978. Then later, in September of 84, they created another entity that became the parent of both Airways and PAWS. Okay, but Johnson controls the Court of Federal Claims case, right? Yes. Well, that's not binding on us. I understand it's not binding on us. What case of ours has said that you can assign to a wholly owned subsidiary without government approval? I don't know about the wholly owned subsidiary, but the Supreme Court case in Seaboard, I don't think it mentions a wholly owned subsidiary, but it does point out Seaboard Air, which is a US Supreme Court decision, says the Contracts Act does not apply to reorganizations. Well, in fact, didn't the government admit that in this case in the red brief at 24? The Anti-Assignment Act do not cover assignments by operation of law, for example, transfers pursuant to a merger, acquisition, consolidation, or similar reorgs that do not result in a change in equitable ownership. Yes. And that goes all the way back to the Seaboard case, which is an old case, I believe. Yes, but the question is whether this falls into the reorganization category, whether the creation of a new corporation as a subsidiary and the assignment to it is covered by that. Well, again, recognizing that Johnson Controls is not binding on this court, Johnson Controls identifies the creation of a subsidiary and then transfer to it as a reorganization. The Court of Federal Claims, though, wasn't persuaded. What was the error in their reasoning, in its reasoning, for rejecting your conception of Johnson Controls? I think the Court of Claims looked at it from the standpoint of and the government was focusing on this voluntary transfer. And much of the government's brief looks at this being a voluntary transfer. And in the cases that they cite, they say voluntary transfers are bad things and violations of the Act are actually voluntary transfers of claims, not voluntary transfers of a contract. And when you look at a voluntary transfer, if it's part of a reorganization and you still... That's why operation of law and a reorganization. That's correct. So the Court of Federal Claims is making a distinction between things that happen by operation of law outside of the control of the contractor and things where the contractor is voluntarily doing it. Well, the Court of Federal Claims gave some lit service to Johnson and talked about it, but then kind of ignored the facts of Johnson and somehow, I think, lost over it and simply said, you know, we have a violation of the Act here. And that's part of our argument in this appeal. We have a reorganization that... Well, it's not a reorganization. It isn't? It's a creation of a nuisance city. And that is part of a reorganization structure, Mr. Conner. Well, again, the LC communications case is also not a Federal Court of Claims, but it says operation of law applies to situations for all intents and purposes. The contract with the government continues in essentially the same entity, which has undergone a change in its corporate form or its ownership. I would suggest the creation of a subsidiary and a transfer by the parent of some of its assets into that subsidiary is, you know, a reorganization. Why shouldn't you ask the government for permission if you're voluntarily changing the ownership to a subsidiary corporation, which, as in this case, then the actual ownership, the beneficial ownership, did change later on? Why shouldn't you get the government's approval for that? Well, getting it would be nice. I mean, there is a procedure for an ovation, and the government in this case basically agreed to the transfer and sent us two ovation forms, SLA-3. The government claims they never got them back. To be more precise, they agreed assuming all the parties involved signed the ovation agreement. That's correct. And then there's no evidence in the record that all parties... Well, the government clearly, there's no record that the government ever signed it. Right. That's correct. That's my point. And then there's no evidence that any party on your side witnessed the signatures on your end, right? That's correct. Okay. The parties signed it. They weren't witnessed. By the time there was all this discussion about having signatures on an ovation agreement, which was 2007, right? Yes. At that time, the owners then of New Iberia were different, or at least overlapping, but not completely identical with the owners of American government properties. Is that right? I thought you told me that Barton left in 2007. Yes, and the ovations were in 2007 also. I'm not certain as to... Right. There was one ovation agreement that was sent to American government properties in November of 2007. That would have been after... And then there was another one that was sent in January 2008. Those would both have been after the Bartons left. Right. So at that point, there was not a complete match on ownership of the two entities. That's correct. There would not have been a complete match. The essential people to those contracts, which were listed out for the government when they got the contract, and which Mr. Klingman went through in the deposition of Vic Blackman, all remained. The Bartons never really had anything to do with the construction of that building. Their role would have come in at a later point in time. They run a property management company, and they had 60, 70 different properties that were under lease to the government. Right. But part of the contract was not just constructing a building, but it was also leasing the property. That is correct. The Bartons do not own all the properties that they lease to the government. Sometimes they work on a contract basis with other owners. Okay, Mr. Meyering. Thank you. We're out of time. We'll give you two minutes for rebuttal. Mr. Klingman. May it please the Court, the decision of the Court of Federal Claims should be affirmed. What is it? Why don't we focus on really the only issue that we talked about with appellants, and that is what is the nature of a reorganization that would qualify for the anti-assignment? So what do you believe? I mean, the government says anti-assignment acts do not cover assignments of operation of law. For example, transfers pursuant to a merger, acquisition, consolidation, or similar reorganization that does not result in a change in equitable ownership of the claim or contract? Yes, Your Honor. Similar reorganization, and essentially a reorganization does not involve a voluntary transfer of a single asset to an organization with different equitable owners and different financial— Different equitable owners. What does that mean? If at the time of the transfer, the ownership entities were identical, it wouldn't then have different equitable owners, would it? At the time of the transfer, if the owners were identical, then under that circumstance, arguably the equitable owners would be the same, and arguably that may have occurred at the actual time. Let's assume that at 2005 there was a transfer, and let's assume that it's my understanding at that time the exact same ownership entities owned both of these companies. Is that correct? That's correct, Your Honor. Okay. So then what is the government's position? Would it still—would this not qualify as the appropriate sort of reorganization? Because I don't see in your brief where you've made this argument. I don't see where you've said transfer to a wholly owned subsidiary isn't the sort of reorganization that qualifies for anti-assignment. My mom? The government's position is that it—and that's not the case here, but the government's position is that that might be a closer case, but you still would need— Well, why isn't that the case? Yeah. It's not the case here, Your Honor, because for several reasons. One is that there's a voluntary transfer of a single asset, namely a lease with the government, to a newly formed— As opposed to all the assets— As opposed to all the assets, as in the job control case, of a division or a portion of a company to a wholly owned subsidiary. Also in job control, the transferor organization agreed to remain liable on a contract. We do not have that here. We know that AGP agreed to remain liable on a contract so that it could, say, a couple of years later, transfer its 100 percent ownership in the subsidiary to individuals, which is exactly what happened here. And AGP had no agreement to remain liable. No, but that's not what happened in 2005. It wasn't transferred to individuals. It was transferred to a company that had identical ownership in 2005. At that point, that is correct, that the sole owner of New Iberia, as you say, was AGP. However, there was a voluntary transfer of a single asset as opposed to all of the assets of a division. So there's no corporate organization here. So is that the difference? Or are there other differences? One difference, Your Honor, is that there is a voluntary transfer of a single asset so that there is a sole— Are there other differences besides that? Another difference is that AGP did not agree to remain liable on the contract. It simply transferred the asset. I don't see your brief at pages 23 through 27 as articulating a requirement of retained liability, nor do I understand any of the cases cited as calling out that requirement. Is that something the government now believes in oral argument for the first time is an additional requirement to meet the Anti-Assignment Act? Well, Your Honor, it's simply a distinction. I don't want to know about distinctions. I'm asking you what is required under law for this to occur, and you're just pointing out to me random distinctions among random cases, none of which is actually in the brief. So I want to know precisely what the government's position is on what kinds of reorganizations qualify or don't qualify under the Anti-Assignment Act. Page 24 in your red brief is where you started. You said the Anti-Assignment Act do not cover assignments by operation of law, for example. For example, yes. That is our position, that they're pursuant to a merger, acquisition, consolidation, or similar reorganization. So is your view that this isn't a similar reorganization because a wholly owned subsidiary is just not the same thing as a merger, acquisition, consolidation? Well, Your Honor, that would be a closer case, but that's not what we have here. Initially, we had a wholly owned subsidiary, but before the innovation agreement was ever contemplated, before a draft agreement was ever sent, New Iberia SSA was no longer a wholly owned subsidiary of AGP. That is undisputed. That's in the record. So that is our position here. I can understand your position. You're saying there's a difference between selecting out one government contract and transferring that to a newly owned subsidiary as opposed to changing the corporate form of the entire company. That is also our position, Your Honor. And so why should it make a difference that it's one asset as opposed to all the corporate assets? Because all of the cases that we've cited and that plaintiffs or appellants have cited for the proposition that a reorganization may not fall under the auspices of the Anti-Semite Act all involve what may be referred to as an involuntary transfer of a contract or a claim as a single asset within a larger transfer to division or a portion of a company, a merger of two companies, an acquisition of a single company, a spinoff of, as I said, a division of a company. So that is one difference that is mentioned in page 24 of our brief. And in contrast to transfer of operations of law absent the government agreement, the acts preclude voluntary assignments of this sort here. And then we point out that the lease was not assigned pursuant to a merger, acquisition, consolidation or that type of change of organizational structure. Let me go on to point out that the owners were different. No, you don't go on to point out. Or other change in organizational structure in which the same owners remain responsible for the lease. What I found very confusing about your brief is that you focused throughout this entire section on who owns the new company. Look, you conditioned this notion of what kind of change in organizational structure would be sufficient. The only condition you placed on it is if the same owners are responsible for the lease. And here we have that. And look, you keep saying no. You say that's not true. Look at the next sentence. Instead, appellants voluntarily transferred the lease to a distinct organization with different owners without informing the government they had done so. Well, at the time of the transfer, technically it looks like they had the same owners, not different owners. Your next sentence, because appellants voluntarily transferred the lease to a distinct organization with substantially different ownership, the purported assignment voided the lease pursuant to the Contract Act. Do you see how you have focused throughout this entire brief on the notion of distinct ownership? But now your argument seems to be morphing into something different in oral argument because it's apparent that there isn't different ownership. I'm not saying your new argument is wrong, but it sure as heck ain't what you focused on in your brief. That's correct. We did not focus on the argument about whether a single asset can transfer into a single subsidiary could fall outside of the restrictions of the NFA. There's none of that in here, right? Is there anything in here that says transferring a single asset to a new wholly owned subsidiary? Does the word single asset or individual asset or anything like that appear in here, in this brief, anywhere? I do not recall for certain whether it appears in our brief at the appellate level. It should be if it's the government's argument on what it constitutes to not be part of the Anti-Assignment Clause. Shouldn't it somewhere appear in the brief? Well, they generally are. Because the only thing that appears is this constant focus on change in ownership, which isn't true here. At the time of their alleged assignment, there was no change in ownership. So if that's the criteria, which is the main criteria you focus on throughout, then they've satisfied it. If that is the full focus, but that was not the focus either of the appellant's brief or a subsequent of our brief. And our brief was responding to the appellant's brief, which the appellant has the burden of proof on an appeal. So we were responding to the arguments made by appellants, one of which was that there was never a change of ownership. The government always had the same owners, the same managers. And appellants went on to cite Third Circuit cases, as well as Joplin Controls and some other court of federal claims cases. So let's focus on why there should be a difference between a situation in which there's a transfer of all the assets and the transfer of a single asset. How is the government disadvantaged, potentially, in a situation in which there's a single asset transfer, which is peeled off of the whole company and transferred to a subsidiary? How is the government disadvantaged by that? Well, the government is disadvantaged because, in that case, we have a clear attempt to assign a single asset, a single contract, or a single claim. And that clearly is the purview of the Anti-Assignment Act, in this case, the Assignment of Contract Act, which precludes the assignment of a single contract to a distinct entity without informing the government and obtaining either renovation agreements or a clear assent to the assignment. So the operation of law exception is meant to be a very narrow exception, which was, as Posey-Huntsman pointed out, started with the Seaboard Supreme Court case and a number of cases afterwards, dealing with corporate... Well, is there a risk with the transfer of a single asset that a different group of people may be responsible for the contract, as opposed to the way it was before? That certainly is one of the risks here, and that's exactly what occurred here. Whether or not, in the beginning, at the actual moment of transfer, New Iberia was a wholly-owned subsidiary of AGP. Subsequently, AGP walked away... But what if it had stayed the same? What if the ownership never changed? You've got beneficial facts in that, in 2007, you have two people left, right? That's it, on New Iberia, but AGP is still fully stocked with all the same people. So you do have a change in ownership. What if that hadn't happened, and what if today New Iberia was still a wholly-owned subsidiary with identity of ownership? What would your argument be then? Again, actually, that would be a closer case, but our position is that it would still be a violation of the Assignment of Contracts Act because it was a voluntary assignment to an entity that was created... Well, isn't a merger a voluntary act? A merger is a voluntary act in which two companies combine all of their assets, not simply for the purpose of assigning a single government contract without getting the government's approval. Throughout pages 27 and 28, you articulate for me the policy rationale behind the Anti-Assignment Clause, and you say it's all about making sure the government knows with whom it's dealing. The Anti-Assignment Act establishes the government has the right to contract with whom it wishes and to know with whom it's contracting. And then you have this very rhetorical comment about as two appellants are harassing the government, yada, yada, yada. So if the whole point is simply for the government to get to choose with whom it contracts and to know with whom it's contracting, if there was an identity of ownership in the new Iberia and AGP companies, the government would still know with whom it's contracting and would have chosen the people with whom it contracted. What would be the difference? It would know with whom it's contracting so long as who it was contracting with was disclosed. As long as AGP or the transfer and transferee in the hypothetical case had disclosed to the government that the transfer had taken place, the same management, the same financial resources are available to both parties. We don't have a monetary standard, but it's possible. The point about the same management and financial resources is that if there's an entire transfer of a business, it's the same management and the same resources regardless of the ownership. Whereas in the case of an individual transfer, it's not necessarily the same management and the same resources. That's correct. So again, I do think we did address the distinction between voluntary and involuntary transfers, but in this case we clearly have a situation where a single entity transferred its ownership to what initially was a wholly owned considerate and then the corporate parent walked away and we had far fewer financial resources available and a different management structure after the middle of 2007. And by the way, the felons did not inform the government of that transfer. But that can't be it. I don't know why you keep going back to these points that you could tell that I'm very unhappy with. It can't be that in 2007, if the transfer took place in 2005, that in 2007 there was a change in either the financial or the managerial structure of New Iberia that somehow now moots whether or not it was a valid transfer in 2005. That can't be the case. Because what? AGP. People could walk away, right? The contract would still exist with AGP. If there was no transfer here to begin with, the finances of the company could change, the ownership could change over time after the time of execution of the contract. So it just can't be the fact that these people walked away years later that is what is the crux of why you should prevail. There's a distinction, Your Honor, between a single corporation holding a government contract being the counterparty to a government contract and changing ownership through time, which is not addressed by any statute that I'm aware of, and a transfer, an assignment, which on its face violates the assignment of contracts. What you're saying is that at the time of the transfer, the management and the resources were not transferred. They remained with the old company and there was a new company created for this single contract. It's not a question of the ownership being different because, as Judge Moore points out, the ownership didn't change until later. Your concerns go beyond the ownership. Absolutely, Your Honor. Your concerns go to the financial responsibility and financial backing of the contract. And as the Court of Federal Claims correctly pointed out in its decision, and this is actually in its decision in the related case of HOMA versus the United States, which the Court incorporated fully into its decision in this case, the plaintiff has neither alleged nor presented evidence suggesting that HOMA, or in this case, New Liberia SSA, maintained the same management outside of the commonality of Mr. Blackman and several other owners common to both companies, or the same financial wherewithal to perform the contract. The government lost assurance that the resources of AGP would be available to complete the project should the GSA be forced to seek a remedy for breach. Thank you, Mr. Klineman. Thank you, Your Honor. Mr. Meier, you've got two minutes. So, I have one question. If you thought the 2005 transfer was permissible under the assignment of contracts, why did you seek innovation in 2007, which would allow this new company to be substituted? That was simply their policy to do so. A couple points that I think need to be made. First of all, the idea that AGP didn't agree to remain liable is a fallacy. AGP signed the agreement, and by law, it simply remained liable under that contract. It couldn't extract itself from that liability simply by going through this reorganization. As far as the assets that were transferred, you have to view this in the context of when this transfer took place. The only asset that was there was a management company to perform the contract care attacks, which was going to perform the contract for Novoberia and also the contract. The financing hadn't been put in place yet. The financing, when it eventually went in place, was with Novoberia. So, all the resources and assets with respect to this particular contract ended up in Novoberia. The other thing I think, and I realize Johnson Controls is not binding on this court, but it was the government that made those arguments in Johnson Controls. It wasn't the third party. The government was making the argument that this was a reorganization. And when they cited the fact, this was the government's position. And I find it somewhat disconcerting that it's making a different argument in this case.  And finally... They say it wasn't a transfer of a single contract in Johnson Controls, right? It was one contract in Johnson Controls. Only one contract? Yes. They reference it as an ETR contract that was entered into in 1978. And that was, in 1980, transferred into the wholly owned subsidiary that Johnson Controls set up. And I think it also has to recognize that, subsequent to this, in 1984, there was a new person come into play. There was a change in ownership. That's when Johnson Controls actually came into the picture, is in 1984. Okay, Mr. Klingler, I think we're about out of time. Thank you for your attention. Thank both counsel. The case is submitted.